UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STELLA SYSTEMS, LLC, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MEDEANALYTICS, INC.,<br><br>　　　　　Defendant. | Case No. 14-cv-00880-LB<br><br>**ORDER ON DISCOVERY LETTER**<br>[Re: ECF No. 126] |

# INTRODUCTION

The parties' current discovery dispute (ECF No. 126)[1] covers three subjects in which the plaintiff ("Stella") has sought information, and the defendant ("Mede") has refused to supply it. The court finds this matter suitable for determination without oral argument. *See* Civ. L.R. 7-1(b). After considering the parties' arguments, the court rules as follows.

# ANALYSIS

"[B]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013) (quoting *Hallett v. Morgan,* 296

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER – 14-880 LB

F.3d 732, 751 (9th Cir. 2002) (alteration omitted in *Dichter-Mad*); *see also, e.g., Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery . . . .").

## I.  MEDE'S "ATTEMPTS TO SELL ITSELF"

The first group of discovery requests involve what Stella calls Mede's "attempts to sell itself." (*See* ECF No. 126 at 1-3.) There are five disputed requests in this category. Interrogatory #7 asks Mede to "identify all third parties" with whom Mede "communicat[ed]," from January 1, 2012 to the present, about the "possible sale, acquisition or merger" of Mede. (*Id.* at 9) (capitals removed). Request for Admission #113 asks Mede to admit or deny that during 2014 it communicated with third parties about "the possible sale, acquisition or merger" of Mede. (*Id.* at 10.) Two requests for production (#30, #31) respectively ask for communications with, and documents authored by, "any potential acquirer" regarding "any consideration of selling" Mede to that potential buyer. (*Id.*) Finally, more narrowly, in Request for Production #29, Stella asks Mede to produce "all documents" regarding "Oracle Corporation's decision, in the fourth quarter of 2012 not to acquire" Mede. (*Id.* at 9.) As a compromise, Stella has offered to narrow the document requests to those created after January 1, 2012, and to limit them to a list of specific custodians. (*Id.* at 3.)

These documents are relevant, in Stella's view, to Mede's motive for (allegedly) "poaching" Stella employees so that Mede would look more valuable to potential buyers. (*Id.* at 1-2.) Motive, Stella says, is "central" to its intentional-interference claim and relevant to its request for punitive damages. (*Id.*) Mede responds (in sum) that it has already produced the information that should answer these concerns and that it is a "fishing expedition" for Stella to pry generally into all of Mede's "possible" transactions with third parties. (*See id.* at 2-3.) Mede states that it has already:

1. produced non-privileged documents from email searches of key custodians that contain key terms such as "Oracle" and "solicit";
2. agreed to produce non-privileged documents that refer or relate to the business decision to disengage from Stella and any impact that decision would have on Mede's operation, profitability, or attractiveness as an acquisition target; and
3. agreed to produce non-privileged documents relating to any decision to solicit or hire

ORDER – 14-880 LB                                                                                                               2

Stella employees.

(*Id.* at 2.)

The court agrees with Mede that this material would encompass anything responsive to Stella's requests — if, as Stella says, those requests pertain to Mede's motive to improve its attractiveness to buyers. The documents that Mede says it has already produced, or agreed to produce, do seem to answer Stella's stated needs for propounding these requests. To the extent that they go beyond what Stella's stated needs (to prove motive) justify, they go too far into Mede's general business. There is one qualification: If Mede has already produced emails related to the abortive Oracle sale, as it says it has, then it should be willing to produce other documents related to that proposed deal. Those documents should be produced — assuming any exist, and, of course, subject to any evidentiary protections. Otherwise, the court would not compel Mede to respond to the discovery requests in this group.

## II. MEDE'S VALUATION

The second group of requests seeks information concerning Mede's value. Two interrogatories ask for Mede's estimated value as of December 31, 2012 and September 30, 2014. (ECF No. 126 at 11.) Two requests for production ask Mede to produce "all communications" with, and "all documents authored by," Bain Capital Ventures, regarding Mede's value or "potential acquisition . . . by a third party." (*Id.* at 11-12.) A last request seeks "all documents" relating to Mede's value from January 1, 2011 to the present. (*Id.* at 12.)

Stella gives three reasons that Mede should be required to produce this information. First, Stella says that Mede's value "is relevant to motive." (*Id.* at 3.) As above, Mede has produced or agreed to produce anything that would tend to show that Mede had a motive (of the kind that Stella suggests: namely, to increase its value) for "poaching" Stella's employees or breaching its contract with Stella. Nothing about Mede's overall value as a company speaks usefully to Stella's allegations or "motive" contentions. (To the extent that Requests for Production #26 and #27 ask for information regarding the "potential acquisition" of Mede by third parties, those requests are covered by the reasoning in Part I, *supra*.)

Second, Stella contends that Mede's "changing valuation" will help establish its tort damages.

(*Id.* at 3-4.) Stella writes:

> Stella's damages expert will present a figure to the jury regarding the value *to Stella* of its lost engineers. In supporting that figure, that expert may use as a data point the increase in Mede's valuation . . . and show how much of that increase is attributable to the acquisition of ex-Stella personnel.

(*Id.* at 4) (emphasis added). This is not a tenable measure of damage. Mede gets the essential point correct: "[A]ny change in Mede's valuation does not bear" on Stella's claimed losses. (*See id.* at 4.) The presumed increase in Mede's value does not describe any loss that Stella suffered, under a contract or tort theory. Assume, for instance, that Stella is correct about Mede "poaching" its workers: The value of former Stella engineers while working for Mede says nothing about their value while working for Stella. Too many variables affect how any given employee will aid one company, as opposed to another, to make a casual correlation between the two situations more than abstract, remote, and merely conceivable. The value of those engineers "to Stella" and their value to Mede are two different beasts. On the current record, in any event, the court cannot say that their value to the two companies is so alike that the increased value they brought to one company (Mede) is a better than speculative measure of the loss that their departure caused the other (Stella).

Third, and last on this issue, Stella correctly argues that Mede's value "is relevant to Stella's request for punitive damages." (*Id.* at 4.) It is in fact more than relevant: Proof of Mede's value is indispensable to Stella's request for punitive damages; and the burden of introducing that proof is upon Stella:

> In a federal diversity action based on California law, plaintiff has the burden of proof on each element required for an award of punitive damages, including *defendant's financial condition*. Under California law, proof of defendant's finances is prerequisite to a punitive[-]damages award.

W. Schwarzer *et al.*, *Cal. Practice Guide: Fed. Civil Procedure Before Trial* § 1:1070 (Rutter Group 2014) (emphasis in original) (citing *Adams v. Murakami*, 54 Cal.3d 105, 119-21 (1991)).

The question whether such information is subject to discovery at this juncture, however, is more complicated. "In state[-]court actions, plaintiff cannot obtain discovery as to defendant's wealth without a court order; and such order can be issued only after plaintiff has shown a

'substantial probability' of recovering punitive damages." Schwarzer, *supra,* § 1:1062 (citing Cal. Civ. Code § 3295(c)). This does not bind the federal court, but federal courts in diversity may apply the rule as one of state-law privilege or privacy protection. Schwarzer, *supra,* § 1:1063. The federal rules confirm the court's broad discretion to control the discovery, introduction, and timing of such evidence when relevant to punitive damages. *Cf., e.g., Am. Computech, Inc. v. Nat'l Med. Care, Inc.*, 959 F.2d 239 (9th Cir. 1992) (federal law governed bifurcation of defendant's wealth from liability phase of trial); *Hungarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (trial court had discretion in declining to bifurcate evidence of defendant's financial condition from compensatory phase of trial).

This case is in its early stages. Mede's value appears to be relevant only to Stella's request for punitive damages; it is not as intimately bound up with liability theories as such evidence sometimes is. This court is sitting in diversity and applying California substantive law, which (apart from its most procedural aspects) includes California law on punitive awards. Taking all these facts into consideration, the court declines to require Mede to respond to these discovery requests at this time. When other evidence has developed, if Stella can show a "substantial probability" that it will prevail on its punitive-damages request, *see* Cal. Civ. Code § 3295(c), the court will entertain a motion to compel Mede to produce the requested information, as then seems appropriate. For now, the court concludes that Mede should not be made to respond to these requests.

### III.   "IMMIGRATION ISSUES"

The last set of requests asks Mede to produce information "regarding Mede's practices of issuing immigration visa applications for ex-Stella employees." (ECF No. 125 at 5.) Requests for Production #20, #34, and #35 cover documents related to exactly that topic; Request #36, somewhat differently, asks for "all Form W-2s" that Mede has issued for former Stella employees. (*See id.* at 13-14.)

Stella maintains that the immigration information is relevant in two ways. First, it is supposed to show Mede's motive for "poaching" Stella employees. The reasoning here is a bit convoluted. According to Stella, Mede has accused it of refusing to send its employees to the United States,

1  apparently for training. (*See* ECF No. 126 at 5.) Stella claims that it "objected to Mede's attempt
2  to bring over Stella employees on B1/B2 (not H-1B) visas and have them illegally perform work
3  in the U.S. under those visas." (*Id.*) This objection, contends Stella, gave Mede the "impetus" to
4  "directly solicit Stella's employees." (*Id.*) Second, relatedly, Stella argues that the requested visa
5  information will show that Mede's alleged interference in the Stella employment contracts was
6  "wrongful" because it was prompted by Stella's "refusal to violate U.S. immigration laws." (*Id.* at
7  5-6.)

8      Mede offers several responses. It first notes that Stella's rationale for needing this information
9  has changed — and now goes beyond the bounds of the complaint. "The Complaint's only support
10 for this request," Mede writes, and the "only relevance theory" that Stella advanced in conferring
11 with Mede, was its allegation that Mede used "offers of immigration to entice Stella employees to
12 join Mede." (*Id.* at 6.) "Yet Mede *already* agreed to produce all solicitation-related documents or
13 communications with then-Stella employees"; this "would encompass any discussion of
14 immigration." (*Id.*) Furthermore, Mede has "agreed to answer Stella's immigration-related RFAs,
15 Nos. 105-108." (*Id.*) Neither party explains specifically what those RFAs cover. Finally, Mede
16 correctly points out that California interference law requires Stella to prove that Mede engaged in
17 an "independently wrongful act . . . *that induced the at-will employee to leave*" Stella. (*Id.*)
18 (quoting *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1145 (2004) (emphasis by Mede)). Mede sees "no
19 logic" in Stella's theory that a violation of immigration law induced Stella employees to leave for
20 Mede. Furthermore, Mede concludes, "Stella has not provided even a hypothetical theory as to
21 how Mede's conduct was 'wrongful' or in violation of any immigration law." (*Id.*)

22     The court understands Mede's position. Stella's argument — that its unwillingness to agree to
23 (what in its view were) inappropriate B1/B2 visas, under which Mede would train Stella
24 employees in the U.S., prompted Mede to hire these employees outright — does appear strained.
25 Hiring those workers outright would, after all, require the very H-1B visas that Stella says Mede
26 wanted to avoid. Nor is it clear how Mede's bringing the employees to train in the U.S. on the
27 "wrong" visa — assuming that characterization is correct — can have "induced" these employees
28 to leave Stella. *Reeves*, 33 Cal. 4th at 1145. All that said, on the basis of what is before it, the court

ORDER – 14-880 LB                                                                                    6

cannot say that the visa-application material that Stella requests will not lead to the discovery of admissible evidence. Evidence, moreover, that includes material beyond the "solicitation-related" documents that Mede has agreed to produce. The material that Stella requests — if it is not in the center of the ballpark described by the parties' immigration-related issues — seems to be at least in the surrounding neighborhood.

One qualification applies to the W-2s. The court assumes that Stella is asking for these because receiving a W-2 implies that a former Stella employee was in this country on an H-1B work visa. But that much will be shown by the fact that a given employee was issued a W-2 at all. The court does not see how a W-2's further details — for example, a person's income — bear on any immigration question. Details like that may be redacted from the W-2s; indeed, information personal to these employees in any document covered by these requests may be subject to redaction for, broadly speaking, reasons of confidentiality. It may be that privacy concerns can be addressed adequately by a protective order.

## CONCLUSION

The court reaches the following conclusions regarding the subject discovery: 1) Mede need not respond to any of the requests concerning its efforts to "sell itself" — except that, inasmuch as it has already produced emails related to the Oracle deal, it should be willing to produce other such documents; 2) Mede need not respond to any of the requests concerning its "valuation"; and 3) Mede should respond to all the requests concerning immigration, except that it may redact people's private information (beyond their basic identity) from the W-2s.

**IT IS SO ORDERED**.

Dated: February 25, 2015

LAUREL BEELER
United States Magistrate Judge