UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STELLA SYSTEMS, LLC, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>MEDEANALYTICS, INC.,<br><br>   Defendant. | Case No. 14-cv-00880-LB<br><br>**ORDER ON DISCOVERY LETTER**<br>[Re: ECF No. 131] |

# INTRODUCTION

The parties' latest discovery dispute (ECF No. 131)[1] finds defendant MedeAnalytics, Inc. ("Mede") asking the court to compel the plaintiff, Stella Systems, LLC, to obtain and turn over to Mede software code that belongs to a third-party German company, Digital Champion, GmbH.[2] Mede believes that Digital Champion may have acquired Mede's proprietary code from Stella and may be using that code in Digital Champion's data-analytics products. (*See id.* at 2.) The parties do not dispute that the sought material would be discoverable if matters are as Mede alleges them

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

[2] Mede specifically seeks: "all source code, technical specifications, and related documentation for Digital Champion GmbH's products, products-under-development, prototypes, and services, including but not limited to Revenue Cycle Champion." (ECF No. 131 at 1.) Revenue Cycle Champion is a product that helps healthcare companies manage their revenue and accounts receivable." (*Id.* at 2.)

ORDER 14-880 LB

to be; *i.e.,* that Mede's request "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). The parties' dispute instead comes down to whether Stella its chief executive, defendant Oleksiy ("Alex") Stepanovskiy, has a relationship with Digital Champion that gives them control over the sought code. *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995); *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561 (D. Md. 2006). Mede claims that Mr. Stepanovskiy controls Digital Champion, that it is another of his companies. (ECF No. 131 at 2-3.) Stella responds that this is incorrect. It claims that, while Stella and Mr. Stepanovskiy have an amicable relationship with Digital Champion, the latter is nonetheless a wholly unrelated company, and that it has no control over Digital Champion's code and no right to demand that Digital Champion turn it over. (*Id.* at 4.) If Mede wants Digital Champion's code, Stella argues, it must use the devices of the Hague Evidence Convention. (*Id.*)

## STATEMENT

### I.   STELLA TEMPORARILY POSSESSED DIGITAL CHAMPION'S CODE

The first thing to note, factually, is that Stella temporarily possessed the Digital Champion code — though Stella has since "destroyed the copy" that it was given. Stella explains that Digital Champion's CEO is an "acquaintance" of Mr. Stepanovskiy. (*Id.* at 4.) Drawing on that relationship, Mr. Stepanovskiy convinced Digital Champion to give Stella a copy of the code on the condition that Stella would not turn it over to Mede, but would give it to a third party to analyze. (*See id.* at 5 (Mede's request for the code "went beyond the authorization" that Digital Champion granted Stella).) The company that Stella has in mind is called Black Duck. Black Duck would analyze the Digital Champion code to determine if it has elements that are proprietary to Mede. Black Duck would then give Stella and Mede the results of its analysis. (*See id.*) Stella claims that it and Mede agreed to this third-party review while discussing settlement before Judge Corley. (*Id.* at 4-5.) According to Stella, Mede balked at the Black Duck review, insisting that Stella deliver the code directly to Mede. (*Id.* at 5.) With third-party review out the window, Stella "destroyed" its copy of the Digital Champion code. (*Id.*)

ORDER 14-880 LB

2

Mede denies that the parties reached such an agreement before Judge Corley; Mede also questions whether it's appropriate to invoke an agreement that was discussed during settlement negotiations. (*Id.* at 4-5.) The court thinks that the parties' dispute in this area is inconsequential. The only operative question now is whether the Stella parties control Digital Champion's code. If they do, then they may have to produce it to Mede; if they do not, then obviously they cannot give it to Mede. Similarly, that Stella temporarily possessed the code is relevant only for the light that it sheds (if any) on the relationship between the Stella parties and Digital Champion — or, more exactly, on whether Stella or Mr. Stepanovskiy "controls" the Digital Champion code.

## II.  STELLA'S AND MR. STEPANOVSKIY'S RELATIONSHIP WITH DIGITAL CHAMPION

The pivotal facts involve the nature of the relationship between the Stella parties and Digital Champion. Most basically, Stella asserts that "Digital Champion is not owned or controlled by Mr. Stepanovskiy." (ECF No. 131 at 4.) It also says that "[n]either Stella nor Mr. Stepanovskiy exercise[s] any control over Digital Champion." (*Id.*) Stella has produced evidence, which it describes as "German governmental records," that supposedly "prove that a man named Gleb Dolotov is the sole shareholder and sole executive of Digital Champion." (*Id.*; *see* ECF No. 131-11 at 14-18.) The records in question are indeed in German. Without translation, which Stella has not provided, these pages do not tell the court who owns or is an executive of Digital Champion. The most the court can say from reviewing the documents in their current form is that they appear to give various kinds of information about Digital Champion (that company's name appears all over the documents); the very top of the first page says, "Dolotov, Gleb"; and Mr. Stepanovskiy's name appears nowhere in these pages. (The court could probably get a sense of what the documents say by using an online translator. That, however, would be going beyond the record that the parties have established and would require the use of extrinsic material that may not meet the standards for judicial notice. At all lengths, neither party has given the court law or additional facts in this regard, so the court takes the "German governmental records" as Stella has presented them.)

Mede counters that, "[a]s recognized by this Court, Digital Champion GmbH is affiliated with and controlled by Mr. Stepanovskiy." (ECF No. 131 at 2.) Mede also correctly writes that "Stella's counsel previously told the Court [at the September 25, 2014 preliminary-injunction hearing] that Digital Champion 'is an affiliate or is also owned by Mr. Stepanovskiy." (ECF No. 131 at 3.) Stella now says that this was "incorrect"; its earlier statement was based on the limited information that Stella's counsel had at the time. (*See id.* at 4 n. 3.) The motion that was the subject of the September 25, 2014 hearing, in Stella's view, "did not concern Digital Champion in a meaningful way," so Stella's counsel "obtained only a cursory (and incorrect) understanding of Digital Champion." (*Id.*) That is a fair explanation and the court accepts it.

Still, two facts stand out as odd. Mede points to both of them to show that Mr. Stepanovskiy is in a position to "control" the Digital Champion code. First, in an undated proposal brochure in which Digital Champion offers one of its software products (not Revenue Cycle Champion) to a prospective customer, Mr. Stepanovskiy is named as Digital Champion's CEO. (ECF No. 131-2 at 4-5.) Second, Mede points to emails in which Mr. Stepanovskiy — as recently as September 27, 2014 — uses "@digitalchampion.net" and "@schoolchampion.com" domain names. (ECF Nos. 131 at 3, 131-9 at 2, 131-10 at 2.) (According to Mede, School Champion was a predecessor company to Digital Champion.(*See* ECF No. 131 at 3.)) Thus, in the late Septemer email, Mr. Stepanovskiy's email address appears as "oleksiy.stepanovskiy@digitalchampion.net." (ECF No. 131-9 at 2.)

As to the first point, Stella responds: "At one point, Mr. Stepanovskiy was in discussions to become the CEO of Digital Champion. The paperwork was never processed and Mr. Stepanovskiy abandoned all use of that title." (*Id.* at 4 n. 3.) It is surprising that Digital Champion would present Mr. Stepanovskiy to third parties as its chief executive before he actually was, but Stella's explanation is at least facially coherent. The court has no basis for disbelieving Stella. Maybe the email issue, too, is somehow related to Mr. Stepanovskiy's abortive discussions to become Digital Champion's CEO; it is impossible to say because Stella does not address the email issue. These emails plainly suggest that Mr. Stepanovskiy had *some* relationship with the Digital Champion

ORDER 14-880 LB

4

entities. Nothing in the emails' content, however, indicates what his role might have been. And nothing in these emails, or about them, suggests that Stella or Mr. Stepanovskiy currently has "control" over, or a "legal right" to demand, the requested Digital Champion code.

Mede also writes that "many Stella employees appear to be Digital Champion employees" (ECF No. 131 at 2), but the evidence cited to support this (ECF No. 131-2 at 3-4) indicates nothing about either company's employees.

## ANALYSIS

### I. GOVERNING LAW

"It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if those documents are under the custody or control of a party to the litigation." *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) (citing cases). "The crucial factor is that the documents must be in the custody or under the control of a party to the case." *Id.* at 564. "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought on demand." *Id.*; *accord, e.g. Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (quoted in *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013)); *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012).

"Common relationships between a party and its related nonparty entity are particularly important to the determination of control. Critical factors here include the ownership of the nonparty, any overlap of directors, officers, and employees, and the financial relationship between the two entities." *Steele*, 237 F.R.D. at 564. "The specific form of the corporate relative involved does not matter, *i.e.,* whether it is a parent, sister, or subsidiary corporation. Courts are able to disregard corporate form to prevent, among other things, "misleading actions whereby corporations try to hide documents or make discovery of them difficult."' *Id.* (quoting in part *Uniden Am. Corp. v. Ericsson, Inc.,* 181 F.R.D. 302, 306 (M.D.N.C.1998)).

Relatedness is, as a practical matter, often bound up with control — so that for any two entities these notionally distinct considerations stand or fall together. The more closely related any two

ORDER 14-880 LB

1  entities are, the more control they are likely to have (or be deemed to have) over each other's
2  respective material. Conversely, if entity *A* lacks control over, and has no legal right to demand,
3  entity *B*'s documents, then it is unlikely that the entities are related. The upshot of all this being
4  that, while the court is aware of the issue of relatedness within the governing test, it draws this
5  inquiry primarily along the thread of "control."

6  "Several factors are relevant to determining whether a party has control over documents that
7  are in the possession of a related nonparty for the purpose of Rule 34." *Steele*, 237 F.R.D. at 564.
8  "In *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127, 130 (D. Del. 1986), the court identified
9  three: (1) the corporate structure of the party/nonparty, (2) the nonparty's connection to the
10 transaction at issue in the litigation, and (3) the degree that the nonparty will benefit from the
11 outcome of the case. *Id.* at 331. Other relevant factors include whether the related entities
12 exchange documents in the ordinary course of business, and whether the nonparty has participated
13 in the litigation." *Steele*, 237 F.R.D. at 564 (citing *Afros*, *supra*, and *Uniden*, 181 F.R.D. at 306).

14 "[T]he burden of proof rests with that party seeking production . . . ." *Steele*, 237 F.R.D. at
15 565. "[A]n unsubstantiated assertion [of control]," moreover, "generally does not suffice." *Id.*
16 (interpolation in *Steele*) (citing cases).

17 **II. APPLICATION**

18 The court holds that, under this law, and considering the facts discussed above, Mede has not
19 made out a case for compelling Stella or Mr. Stepanovskiy to obtain and turn over to Mede Digital
20 Champion's code. Mede has not shown that the Stella entities *could* obtain that code; which is to
21 say, in the operative language, Mede has not shown that the Stella parties "control" the Digital
22 Champion code. When one reviews the evidence that the parties have submitted, and weighs
23 Stella's explanations, Mede's assertion that the Stella parties control Digital Champion is, in the
24 end, "unsubstantiated."

25 Where courts have compelled a party to produce information nominally belonging to a non-
26 party, it is generally because the companies in question share some sort of corporate relationship.
27 That is to say, the compelled party and the non-party are parent and subsidiary, for example, or

ORDER 14-880 LB

6

sister corporations. *See, e.g., Gen. Envtl. Science Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N. D. Ohio 1991) (cited by Mede at ECF No. 131 at 3) (explaining that courts have ordered discovery of non-party's material where companies showed "structural interlocking," as with "parents and subsidiaries, and sister corporations").

The Stella parties' rebuttal is not the most decisive ever mounted. Why Mr. Stepanovskiy shows up as Digital Champion's CEO on a finished proposal to another company, and why as recently as the end of September 2014 he was using an email account with a Digital Champion domain name, are oddities not fully resolved by Stella's explanation that Mr. Stepanovskiy "was in discussions to become the CEO of Digital Champion." The court nonetheless thinks that the determinative legal issue is that of the burden, which falls on Mede. On the record before it, the court cannot say that Mede has shown that Stella or Mr. Stepanovskiy "controls" the requested Digital Champion code. If the court did order the Stella parties to obtain and produce that code, to Mede or to a third-party analyst, on the evidence before the court, that order may well be a practical nullity.

If further discovery yields additional facts about the relationship between the Stella parties and Digital Champion, then the court would entertain a new discovery letter. The court would note that having a third party review the code seems a sensible approach. The parties should try to agree on such a process. Stella could use its best efforts to again obtain a copy of the code from Digital Champion, with the express understanding that Mede itself will not receive the code, but only the results of the third party's analysis. If the parties cannot so agree, or if Stella cannot convince Digital Champion to turn over a copy of the code, then the situation remains as it is and, for the reasons given above, the court cannot compel Stella to produce something that apparently it does not control.

Ordinarily, the party opposing a motion to compel will support its position with a sworn factual declaration. Mr. Stepanovskiy did not do so here. Especially given the state of the facts surrounding Mr. Stepanovskiy's relationship with Digital Champion, in the interest of clarity and certainty, the court thinks that Mr. Stepanovskiy should file a declaration fully explaining his

ORDER 14-880 LB

relationship with Digital Champion.

## CONCLUSION

The court will not compel the Stella parties to obtain or produce to Mede the Digital Champion material that is the subject of the disputed discovery requests (*see* ECF No. 131-1 at 2-3.) The court orders Mr. Stepanovskiy to file the declaration discussed above within 14 days of this order.

This disposes of ECF No. 131.

**IT IS SO ORDERED.**

Dated: April 22, 2015

LAUREL BEELER
United States Magistrate Judge

ORDER 14-880 LB